**6**

GABRIEL P. HERRERA, State Bar No. 287093
gherrera@kmtg.com
KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
A Professional Corporation
1331 Garden Hwy, 2nd Floor
Sacramento, California 95833
Telephone: (916) 321-4500
Facsimile: (916) 321-4555

Attorneys for ETHAN J. BIRNBERG,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>3D INVESTMENTS GROUP, LLC,<br><br>Debtor. | Case No. 25-20593<br>Chapter 7<br><br>DCN: KMT-6<br><br>**MOTION TO APPROVE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND ENCUMBRANCES AND FOR COMPENSATION OF BROKER**<br><br>Judge: Hon. Christopher M. Klein<br>Date: October 8, 2025<br>Time: 10:00 A.M.<br>Dept.: Dept. C, Crtrm 35, 6th Floor<br>501 I Street<br>Sacramento, CA 95814 |

Ethan J. Birnberg ("Trustee"), in his capacity as the Chapter 7 trustee for the bankruptcy estate of 3D INVESTMENTS GROUP, LLC ("Debtor"), hereby moves for an order:

(a) pursuant to 11 U.S.C. section 363(b), approving his sale, subject to overbidding, of the bankruptcy estate's interest in certain real property located at 2305 Fulton Avenue, Sacramento, CA 95825 / APN: 278-0094-025 ("Subject Property") as is, where is, and without representation and warranty to Heris Group Inc. or its nominee ("Buyer") for the all-cash purchase price of $1,400,000.00 pursuant to a Commercial Purchase Agreement and Joint Escrow Instructions, Addendum, and Counter-Offer ("Agreement");

///

(b) approving compensation to the bankruptcy estate's real estate broker, Re/Max Gold ("Broker"), in the amount of $70,000.00 (5% of the gross sale price) that may be split with any buyer's broker, or the appropriate commission resulting from a successful overbid;

(c) providing that the sale of the Subject Property is free and clear of any interest of Naeim Zamani Mahfroujaki ("Zamani") pursuant to 11 U.S.C. section 363(f);

(d) authorizing the Trustee to pay undisputed liens and encumbrances from escrow;

(e) waiving the 14-day stay period imposed by Federal Rule of Bankruptcy Procedure 6004(h); and

(f) approving overbid procedures that include honoring a right of first refusal such that in the event there is any overbid, the Buyer may agree to match the overbid. In the event that the Buyer agrees to match any overbid, the overbidder or any other bidder may continue to overbid until the Buyer chooses not to match the overbid or any bidder chooses to discontinue making any overbids;

(g) approving the overbid procedure that requires bidding to begin at $1,420,000; and

(h) authorizing a "break-up fee" of up to $15,000 for the reasonable related transaction fees and costs of the purchase of the Subject Property.

## FACTUAL BACKGROUND

**A. The Sale**

1. On or about February 12, 2025, the Debtor commenced the above-captioned bankruptcy case by filing a voluntary Chapter 7 petition. The Trustee is the duly appointed Chapter 7 trustee for the Debtor's bankruptcy estate.

2. Among the scheduled assets of the Debtor's bankruptcy estate is the Debtor's interest in the Subject Property. The Subject Property is a retail building of approximately 3,167 sq. ft. The property has historically been leased by single tenant used car dealerships. Based on the Trustee's investigation, the Trustee understood that the property was worth approximately $1,200,000.00 and subject to a secured claim in the approximate amount of $802,638.01 held by First Citizens Bank as of May 19, 2025.

/ / /

3. On or about August 26, 2025, the Court entered an order granting KMT-3, the Trustee's application to employ the Broker to sell the Subject Property. The Broker advised that the Subject Property should be marketed for a sale price of $1,200,000.00.

4. The Subject Property is the subject of a lease to Armani Financial Group, Inc. ("Armani"). Armani operates as a car dealership on the Subject Property. Armani contends that its lease provides Armani with a right of first refusal to purchase the Subject Property.

5. Armani has assigned the purported right of first refusal to the Buyer. The Trustee understands that the Buyer is related to Armani and the intent is for Armani to continue to operate at the Subject Property as a car dealership.

6. The Trustee estimates that the estate will net approximately $500,000.00 from the sale of the Subject Property.

**B.     The Purported Lien and/or Encumbrance of Zamani**

7. The Debtor was formed in or about September 2014 as a California limited liability company with its principal place of business at the Subject Property. The Operating Agreement for the Debtor reflects that Naeim Mahfroujaki ("Naeim") and Zamani were the sole members of the Debtor, and the Debtor was member managed. The members were authorized to manage and have "all powers" with respect to the "business, property, and affairs of the Company."

8. Prior to the filing of the bankruptcy case, the Debtor was involved in multiple lawsuits involving the Naeim and Zamani, including County of Placer Case No. S-CV-0048740 ("Placer Lawsuit") and County of Sacramento Case No. 34-2023-00333705 ("Sacramento Lawsuit"). The lawsuits, which were filed in 2022 (the Placer Lawsuit) and 2023 (the Sacramento Lawsuit), included claims for breach of fiduciary duty, conversion, negligence, injunctive relief, and an accounting.

9. In the Sacramento Lawsuit, Zamani filed a Notice of Pendency of Action in relation to the Subject Property. The Trustee has investigated the Notice of Pendency of Action and understands that it was never recorded against the Subject Property. Likewise, Zamani's counsel confirmed that the Notice of Pendency of Action was based on derivative claims held by the Debtor, and for which are property of the bankruptcy estate, and any Notice of Pendency of Action would

1  be released to allow a sale to move forward.

2      10.    Zamani has filed Proof of Claim Nos. 8 and 12 asserting unsecured claims against
3  the estate.

## **RELEVANT TERMS OF THE SALE AGREEMENT AND THE BREAK-UP FEE**

Subject to Bankruptcy Court approval, the Trustee has agreed to sell the Subject Property to the Buyer for $1,400,000.00 as-is, where-is, and without representations or warranties. The sale has no contingencies and is all cash.

The Agreement also authorizes a "break-up fee" of up to $15,000 for the reasonable related transaction fees and costs of the purchase of the Subject Property. The Trustee believes that the "break-up fee" is in the best interest of the estate, otherwise the Buyer considered not entering into the Agreement. Moreover, the "break-up fee" was negotiated by the parties. Indeed, the Buyer originally wanted an unlimited amount for the break-up fee. Now, the Buyer only receives reimbursement of expenses incurred up to $15,000, and the Buyer only receives the "break-up fee" in the event there is an overbidder and the Buyer is not the successful bidder. Notably, the offer accepted provides for a purchase price that significantly exceeds the price advised by the Broker.

## **PROPOSED OVERBID PROCEDURES**

In the event there is overbidding, the Trustee requests that the Court start the overbidding in an amount that is at least **$1,420,000**, that each overbid is in at least $5,000 increments, and proof of available funds be provided and a cashier's check in the amount of $10,000.

In addition, the overbid procedures include honoring a right of first refusal such that in the event there is any overbid, the Buyer may agree to match the overbid. In the event that the Buyer agrees to match any overbid, the overbidder or any other bidder may continue to overbid until the Buyer chooses not to match the overbid or any bidder chooses to discontinue making any overbids. This particular overbid procedure provides a balance between simply adhering to the right of first refusal and litigating whether the right of first refusal is valid in order to maximize the return to the estate.

/ / /

/ / /

## BASIS FOR SALE

The Court should approve the sale to the Buyer. After notice and a hearing a trustee may sell assets of a debtor's bankruptcy estate. 11 U.S.C. § 363(b). In order to approve a sale, the trustee must demonstrate a valid business justification, and that the sale is in the best interest of the estate. *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (9th Cir. BAP 1996); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841-42 (Bankr.C.D.Cal. 1991). Notably, "'the trustee's business judgment is to be given great judicial deference.'" *Alaska Fishing Adventure, LLC*, 2018 WL 6584772, *4 (Bankr. D. Alaska Dec. 11, 2018), quoting 3 Collier on Bankruptcy ¶ 363.02[4] (Richard Levin & Page 13 of 17 Henry J. Sommer eds., 16th ed.). Further, courts consider whether the sale is fair and reasonable, has been given adequate marketing, has been advertised and negotiated in good faith, the purchaser is proceeding in good faith, and it is an arm's length transaction. *In re Wilde Horse Enterprises, Inc.*, 136 B.R. at 841.

The sale to the Buyer is in the best interest of the estate and has a valid business justification because it will result in the sale of the Subject Property for a sale price that approximates the Subject Property's fair market value. Indeed, the offer accepted exceeds the value the Broker advised the Trustee to market the Subject Property. Moreover, the sale will result in net proceeds in an amount of approximately $500,000.00. Likewise, the accepted offer avoids litigation over the right of first refusal and Armani's ability to stay in the Subject Property pursuant to its lease. Notably, the sale is subject to no contingencies and is an all cash offer. Moreover, the sale is subject to overbidding in the event there are interested overbidders, and is being purchased "as is" and "where is." Accordingly, the sale is in the best interest of the estate.

## BASIS FOR SALE FREE AND CLEAR OF LIENS

The Trustee further requests that the sale be free and clear of any interest of Zamani. 11 U.S.C. § 363(f) provides that "[t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity" if, among other ways, a bona fide dispute exists. "Such interest is subject to bona fide dispute when, 'there is an objective basis for either a factual or legal dispute' regarding the lien's validity." *In re Richards*, 2022 WL 16754394, *5 (9th Cir.BAP 2022). An objective basis may exist where the alleged claim is not "genuinely

supported by any documentation," is not supported by its proof of claim, or if the lien may have the potential to be subject to avoidance under 11 U.S.C. section 544(a)(3).  *Id*.

Here, there are no recorded interest of Zamani against the Subject Property which would render any claim avoidable under 11 U.S.C. section 544.  Likewise, Zamani has confirmed that the claims asserted against the Subject Property are derivative in nature and are property of the Debtor's bankruptcy estate.  Moreover, Zamani has filed a proof of claim only asserting an unsecured interest against the estate and no individual claim against the Subject Property.  Consequently, a free and clear sale is appropriate.

## BASIS FOR APPROVAL OF THE BROKER'S COMPENSATION

The Trustee also requests that the Court approve the Broker's commission in the amount of $70,000.00 (5% of the gross sale price), or the appropriate commission resulting from a successful overbid.  The Trustee notes that the commission may be shared with a buyer's broker, if any.  The amount charged is reasonable and the services were necessary and proper to assist the Trustee with the sale of the Subject Property.  Other than specified herein, no other agreement or understanding exists for compensation to the Broker.

## WAIVER OF 14-DAY STAY PERIOD

The Trustee does not anticipate any opposition to this motion.  As such, the Trustee requests that the 14-day stay period imposed by Federal Rule of Bankruptcy Procedure 6004(h) be waived so that the sale can move forward as soon as possible.

**WHEREFORE**, the Trustee prays that the Motion be granted and for such other and further relief as the Court deems necessary and proper.

DATED:  September 17, 2025

KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
A Professional Corporation

By: _____
Gabriel P. Herrera
Attorneys for ETHAN J. BIRNBERG,
Chapter 7 Trustee

4903-1020-1449.1 015168.004

6

MOTION TO APPROVE SALE OF REAL PROPERTY FREE AND CLEAR OF
LIENS AND ENCUMBRANCES AND FOR COMPENSATION OF BROKER